UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| LANCELOT INVESTORS FUND, L.P., *et al.* | ) | Case No. 08-28225, *et al.* |
| | ) | (Jointly Administered) |
| Debtor. | ) | |
| | ) | Hon. Jacqueline P. Cox Presiding |
| | ) | |
| RONALD R. PETERSON, as Chapter 7 Trustee for Lancelot Investors Fund, L.P., *et al.*, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| ELLERBROCK FAMILY TRUST, LLC, BELMONT STRATEGIC INCOME FUND, LP, RBS CITIZENS, N.A. (f/k/a CITIZENS BANK, N.A. and CHARTER ONE BANK, N.A.), MAXWELL HALSTEAD PARTNERS, LLC, COOPER INVESTMENTS I, LLC, THREE SPOUTS, LLC, FIELD HOLDINGS II, LLC, BRANDON KORESS, PAUL LOEB, POLINSKY INVESTMENTS, LLC, ONTARIO PARTNERS, L.P., NORTHWATER FIVE-YEAR MARKET-NEUTRAL FUND LIMITED, NORTHWATER MARKET-NEUTRAL TRUST, EAST RIVER OFFSHORE LTD., FRENCH RIVER OFFSHORE LIMITED, NEWQUANT OFFSHORE LTD. I, SPECIAL OFFSHORE LTD. E, TRENT RIVER OFFSHORE LTD., ENHANCED INVESTING CORPORATION (CAYMAN) LTD., TRADEX GLOBAL MASTER FUND SPC LTD., THE ABL SEGREGATED PORTFOLIO 3, AND TRADEX GLOBAL MASTER FUND SPC LTD., THE ORIGINAL SEGREGATED PORTFOLIO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Adv. No. 09-413<br><br>**PUBLIC VERSION - REDACTED** |
| Defendants. | | |

**MEMORANDUM OF LAW IN SUPPORT OF
THE TRUSTEE'S MOTION FOR A PRELIMINARY
<u>INJUNCTION STAYING THE TRADEX CLASS ACTION</u>**

## INTRODUCTION

A mere two days before the scheduled hearing on the Trustee's Motion for Preliminary Injunction seeking to stay six state and federal causes of action pending against certain targets (the "Prospective Defendants")[1] of the Trustee's investigation, a trio of related investors—Tradex Global Master Fund SPC Ltd., The ABL Segregated Portfolio 3, and Tradex Global Master Fund SPC Ltd., the Original Segregated Portfolio 3 (the "Tradex Plaintiffs")—filed a class action complaint in the United States District Court for the Northern District of Illinois (the "Tradex Class Action"). The Tradex Plaintiffs purport to sue on behalf of "all persons and entities that invested in, purchased or retained shares in Lancelot Investors Fund, Ltd." (the "Offshore Fund"), one of the Debtors[2] in the bankruptcy case jointly administered in this Court as *In re Lancelot Investors Fund, L.P.* (Tradex Compl. ¶ 1.) The Tradex Plaintiffs allege in their class action complaint that common issues of law and fact "overwhelmingly predominate over any individual questions" in connection with all of the investors' claims against Bell, LIM, DeMaio, and McGladrey (the "Tradex Defendants"). (*Id.* ¶ 52.A.) The Tradex Plaintiffs allege that these common issues include (a) whether the Tradex Defendants breached fiduciary duties; (b) whether the Tradex Defendants acted negligently in overseeing and managing the Offshore Fund's investments; (c) whether the Tradex Defendants were unjustly enriched by the alleged

---

[1] The Prospective Defendants are (a) Gregory Bell ("Bell"); (b) the Debtors' management entities, Lancelot Management, Inc., Lancelot Holdings, LP, Lancelot Investment Management LP (f/k/a Lancelot Investment Management, LLC) ("LIM"), and Colossus Capital Management, LP (together the "Management Companies"); (c) the individual directors of Debtors Lancelot Investors Fund, Ltd. and Colossus Capital Fund, Ltd. (the "Offshore Funds"), Thomas DeMaio ("DeMaio"), Vincent King, Benjamin Miller, and Trevor Sunderland (the "Offshore Directors"); (d) the Debtors' fund administrators, Swiss Financial Services, Inc., and its offshore affiliate, Swiss Financial Services (Bahamas) Ltd. (collectively "Swiss Financial"); and (e) the Debtors' auditors, McGladrey & Pullen LLP, RSM McGladrey, Inc., certain of their offshore affiliates, and their predecessor accountants, including Altschuler Melvoin & Glasser (collectively "McGladrey").

[2] Ronald R. Peterson (the "Trustee") was appointed as the Chapter 7 Trustee for the estate of Lancelot Investors Fund, L.P., *et al.* (the "Debtors"). The Debtors consist of nineteen related entities that were

1

misconduct; (d) whether the Tradex Defendants made false and misleading statements and omissions of material facts in connection with the Fund; and (e) whether McGladrey negligently audited the financial statements of the Offshore Fund. (*Id.* ¶ 51.)

Under controlling Seventh Circuit authority, the Tradex Class Action violates section 362(a)(3) of the Bankruptcy Code and should be enjoined. Contrary to the Tradex Plaintiffs' attempt to prosecute common investor claims as a class action, the Trustee is solely authorized to bring actions "to recover damages [to the debtor] for fiduciary misconduct, mismanagement or neglect of duty," and to assert claims for indirect injuries that were suffered equally by all creditors of the Debtor. *In re Teknek*, 563 F.3d 639, 646 (7th Cir. 2009) (quoting *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1343-44 (7th Cir. 1987)). Here, because the Tradex Class Action asserts general claims on behalf of all investors and seeks to recover for indirect injuries (*i.e.*, the loss of investor funds) that occurred only as a result of the *Debtor's* demise, their claims belong solely to the Trustee.

But even if certain claims brought by the Tradex Plaintiffs were individual claims (which they are not), section 105(a) of the Bankruptcy Code and *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998), authorize this Court to preliminarily enjoin the Tradex Class Action because the Trustee has claims that seek recovery from the same defendants (the Tradex Defendants), arise from the same or substantially overlapping conduct (the failure to ensure the legitimacy of certain transactions with Tom Petters ("Petters") and his affiliated entities (the "Petters Entities")), and seek to recover the same limited pool of assets. If courts were to find in favor of both the Trustee and the Tradex Plaintiffs, the Tradex Defendants would likely be unable to satisfy even a portion of the judgments, let alone all of them. Therefore, in keeping with the Bankruptcy Code's goal of equitable distribution of assets, the Tradex Class Action should be

---

engaged in the operation of related hedge funds or special purpose vehicles.

preliminarily enjoined under section 105(a).

## FACTS

I. **The Relationship of Debtors and
Tradex Defendants to the Petters' Fraud.**

Before October 20, 2008, the date on which the Debtors filed for Chapter 7 protection, Bell controlled the Debtors through his ownership of the Management Companies. (June 17 Decl. of Jason J. Green ("Green Decl."), Ex. A, Lancelot Investors Fund, L.P. Confidential Information Memorandum at 1.) Pursuant to certain offering documents, the authority to make all investment and management decisions on behalf of the Debtors was delegated to Bell, through the Management Companies he created and managed. (*Id.* at 1-4.)

The Debtors served as commercial lenders to a special purpose vehicle ("Thousand Lakes"), (*id.* at 5-10), which was controlled by and affiliated with Petters and the Petters Entities. Bell and the Management Companies caused the Debtors to purchase from Thousand Lakes numerous Notes that were purportedly secured by goods and merchandise owned by the Petters Entities. (*Id.*) The Notes were issued ostensibly to finance Thousand Lakes' purchase of goods to fulfill existing purchase orders from discount retailers such as Sam's Club, Costco, and others (the "Retailers"). Instead, all of the transactions appear to have been shams, part of a multi-billion dollar Ponzi scheme orchestrated by Petters and his co-conspirators. (Green Decl., Ex. B, Criminal Indictment in *U.S. v. Petters, et al.*, No. 08-364, D. Minn.)

On September 24, 2008, FBI agents raided Petters' home and a number of his businesses. The search warrant authorizing the raid was supported by an affidavit from an FBI agent (the "FBI Affidavit"). (*See* Green Decl. Ex. C, FBI Aff.) The FBI Affidavit details a scheme by Petters and his co-conspirators to defraud investment funds and other entities that provided loans and financing to the Petters Entities. (*Id.* ¶¶ 3-14.) On December 1, 2008, a Grand Jury in the

3

United States District Court for the District of Minnesota indicted Petters on charges of mail and wire fraud, conspiracy to commit mail and wire fraud, money laundering conspiracy, and money laundering. (Green Decl., Ex. B.)

As part of the alleged scheme, Petters and his affiliates created fictitious invoices, purchase orders, and other documents, and used the money they had received from investors to (a) make disbursements and other payments to earlier investors and (b) enrich themselves. (*Id.* ¶ 8.) The goods and merchandise in which the Debtors purportedly held a perfected security interest never existed, and certain "pre-existing binding purchase orders" are forgeries. Accordingly, many (if not all) of the Notes held by the Debtors are worthless; the collateral allegedly pledged to the Debtors as security for the Notes is nonexistent; and the documents purportedly evidencing the Debtors' security appear to have been forged.

## II.     The Tradex Class Action

On June 9, 2009, after the Trustee filed his Motion for Preliminary Injunction, the Tradex Plaintiffs filed a class action complaint in the United States District Court for the Northern District of Illinois against Bell, LIM, DeMaio, and McGladrey. Bell and LIM have been described above. DeMaio was responsible for approving the Offshore Funds' purchase of Notes, including those originally issued by Thousand Lakes. (Green Decl. Ex. D, Lancelot Investors Fund, Ltd. Confidential Information Memorandum at 8-9.) McGladrey provided auditing and financial services that primarily consisted of auditing the Debtors' financial statements and issuing opinions as to whether the accuracy of the Debtors' financial condition presented by the financial statements. (*See, e.g.,* Green Decl., Ex. E, Audit Report).

As against LIM, Bell, DeMaio, and McGladrey, the complaint alleges fiduciary breaches, negligence, unjust enrichment, fraud, and negligent representation, and seeks an accounting. As

against LIM and Bell alone, the complaint alleges conversion. As against McGladrey and DeMaio alone, the complaint alleges aiding and abetting both fraud and breaches of fiduciary duty. Specifically, the complaint alleges that the transactions with Petters were entirely fictitious, that the offering documents were materially false and misleading, that Bell and the Management Companies performed little or no due diligence, that McGladrey ignored numerous red flags and issued materially false and misleading audits, and that all defendants engaged in knowing or reckless conduct by not detecting the Petters fraud. The Tradex Plaintiffs do not plead a specific damages amount, but purport to seek "all or substantially all of [the investors'] investments in the [Offshore Fund]," an amount in excess of $1.1 billion. (Green Decl., Ex. F, Tradex Compl. ¶¶ 58, 79, 86, 91.) The Tradex Plaintiffs also seek punitive damages. (*Id.* at 33.)

### III. The Trustee's Investigation

As detailed in the Memorandum in Support of the Trustee's Motion for Preliminary Injunction, the Trustee is currently engaged in an extensive investigation into the activities of the Debtors and is assessing potential claims of the estate against non-debtor third parties, including the Prospective Defendants.

As to Bell, the Management Companies, and DeMaio, the Trustee is investigating and evaluating claims for mismanagement of the Debtors based on the same conduct underlying the Tradex Plaintiffs' complaint. To the extent the Trustee's investigation verifies those alleged management and due diligence failures, the Trustee will seek monetary recovery from Bell, LIM, and DeMaio. Potential relief for the Trustee's claims could reach an amount in excess of $1.4 billion, the amount of investment losses in the Petters Entities, plus the forfeiture and return of management fees, performance allocations, or other compensation paid or credited to Bell, LIM, and DeMaio.

As to McGladrey, the Trustee is investigating and evaluating claims for professional negligence for failing to adequately investigate the Debtors' investments in Petters and for negligently rendering audit opinions that improperly concluded that the Debtors' financial statements presented fairly, in all material respects, the financial position of the Debtors. To the extent the Trustee's investigation verifies that McGladrey was professionally negligent or should otherwise be held liable to the Debtors, the Trustee will seek monetary relief. Potential relief for the Trustee's claims could also reach an amount in excess of $1.4 billion, the amount of investment losses in the Petters Entities, plus the forfeiture of any fees or compensation paid to McGladrey.

## ARGUMENT

I. **The Claims In The Tradex Complaint Belong Exclusively To The Trustee And Should Be Enjoined.**

Section 362(a)(3) of the Bankruptcy Code stays any act to obtain possession of property of the estate or to exercise control over property of the estate. 11 U.S.C. § 362(a)(3). Property of the estate is broadly defined to include whatever legal and equitable interests the debtor had in property as of the filing of the bankruptcy petition. 11 U.S.C. § 541(a)(1). "The estate includes any action a debtor corporation may have 'to recover damages for fiduciary misconduct, mismanagement or neglect of duty,' and the trustee succeeds to the right to bring such actions." *In re Teknek*, 563 F.3d 639, 646 (7th Cir. 2009) (quoting *Koch*, 831 F.2d at 1343-44).

A bankruptcy trustee is also solely authorized to assert so-called "general" claims—claims for indirect injuries that were suffered equally by all creditors of a bankrupt corporation. *Id.* at 645-46. Thus, "a single creditor may not maintain an action on his own behalf against a corporation's fiduciaries if that creditor shares in an injury common to all creditors and has personally been injured only in an indirect manner." *Id.* at 646 (quoting *Koch*, 831 F.2d at

1349).³

The Seventh Circuit has held that "[t]o determine whether an action accrues individually to a claimant or generally to a corporation . . . we must look to the injury for which relief is sought. We must consider whether that injury is 'peculiar and personal to the claimant or general and common to the corporation and creditors.'" *Id.* at 647 (quoting *Koch*, 831 F.2d at 1349). For example, where a third-party non-debtor made fraudulent statements that induced investors to retain their stock in the debtor corporation and caused the corporation to fold, the Seventh Circuit held that the investors' injury from the fraud was indirect, because they would not have been injured if the debtor corporation had not folded. *Kagan v. Edison Bros. Stores, Inc.*, 907 F.2d 690, 692 (7th Cir. 1990) ("the investors' injury flows not from what happened to them . . . but from what happened to [debtor] (it failed, making their stock worthless)").

To be sure, a trustee's effort to bring general creditor claims may encounter resistance from self-interested creditors, who often will seek to collect as much of the debtor's estate as they can, even though doing so will significantly reduce the assets available for the remaining creditors. *Koch*, 831 F.2d at 1352. The Seventh Circuit has found such maneuvers repugnant; in *Kagan*, the court held that "investors' effort to get 100¢ on the dollar while the creditors get next to nothing [was] improper." 907 F.2d at 692.

Here, the Tradex Plaintiffs' complaint asserts general claims that belong to the Trustee because they are both common to all investors and derive indirectly from injuries suffered by the Debtors. By their own admission, the Tradex Plaintiffs bring claims on behalf of "*all* persons

---

³ There are at least two reasons for permitting the trustee to bring general claims. First, as representative of the debtor's estate, the trustee is charged with the responsibility of marshalling and liquidating the assets of the estate and distributing the assets ratably among the creditors, a central goal of the Bankruptcy Code. *Koch*, 831 F.2d at 1342, 1343, 1346, 1352 (7th Cir. 1987). Second, the trustee's priority in asserting general claims promotes judicial economy. *Id.* at 1342-43 ("The trustee's single effort eliminates the many wasteful and competitive suits of individual creditors.").

7

and entities that invested in, purchased or retained shares in Lancelot Investors Fund, Ltd." (Tradex Compl. ¶ 1 (emphasis added).) To that end, the common claims alleged by the Tradex Plaintiffs rely significantly on alleged misrepresentations in the Offshore Fund's Confidential Information Memoranda and McGladrey's audit reports, each of which were given to *all* investors in the Fund. (*Id.* ¶¶ 6, 19, 22-23, 30-32.) Moreover, the injury alleged by the Tradex Plaintiffs is not directly tied to misrepresentation to the investors, but instead to the failure of the Debtors as a result of the Ponzi scheme orchestrated by Petters and the Petters Entities. As in *Kagan*, although the Tradex Plaintiffs allege that the Tradex Defendants deceived them personally, "the deceit is not coupled with the injury" because it was, in fact, the "[debtor's] demise [that] provide[d] the injury." *Kagan*, 907 F.2d at 692. Accordingly, the Tradex Plaintiffs' claims are "general" claims that belong to the Trustee and this Court should enjoin the Tradex Plaintiffs from prosecuting them.

### III.  Even If The Tradex Plaintiffs Alleged Individual Claims, This Court Is Authorized To Enjoin The Tradex Class Action Under Section 105(a).

Seventh Circuit law is clear: a bankruptcy court may enjoin third parties from prosecuting not only causes of action that belong to the bankruptcy estate, but also any cause of action "which may affect the amount of property in the bankrupt estate . . . or the allocation of property among creditors." *Fisher*, 155 F.3d at 882 (internal quotations and citations omitted); *see also Megliola v. Maxwell*, 293 B.R. 443, 449 (N.D. Ill. 2003) ("The relevant inquiry . . . . [i]s whether the [case] affects the bankruptcy estate or the allocation of property among creditors."). If a third party is pursuing the same targets as the bankruptcy estate for claims that are based on the same wrongful conduct, the bankruptcy court may enjoin the prosecution of such third-party claims to allow the estate to proceed first. *Fisher*, 155 F.3d at 882. Only after the estate has had an opportunity to recover on its claims and distribute the proceeds to creditors under the

Bankruptcy Code is it appropriate for third parties to resume prosecution of their claims and collect on any individualized claim not satisfied through the estate. *Id.* at 883.

The relationship of the non-debtor third party to the estate is irrelevant; rather, the issue is whether the action will affect the bankruptcy estate or the allocation of property among creditors. *See, e.g., Megliola*, 293 B.R. at 447-49 (non-debtor third-party plaintiffs do not have to be creditors of the debtor's estate or investors of the debtor for a section 105(a) injunction); *In re Sybaris Clubs Int'l, Inc.*, 189 B.R. 152, 155 (Bankr. N.D. Ill. 1995). The fact that the relief sought by the trustee may be based on different legal theories also is irrelevant when the same or similar conduct underlies claims by the trustee and third parties. *See Maxwell v. Megliola (In re marchFIRST, Inc.)*, 288 B.R. 526, 532 (Bankr. N.D. Ill. 2002) (staying suit where "[a]ll of the parties herein seek damages arising from the same or similar transactions and acts allegedly committed by the directors and officers, albeit under different legal theories.").

In *Fisher*, although the trustee's potential cause of action was distinct from those brought by the defrauded investors, the Seventh Circuit held that, because the investors were suing for debts that arose out of the same subject matter that formed the basis of the trustee's cause of action, they stood "in exactly the same position as the rest of the aggrieved investors, pursuing identical resources for redress of identical, if individual, harms." 155 F.3d at 881. Accordingly, the Seventh Circuit held that:

> [a]s creditors with claims so closely related to the [bankruptcy] estate, the [third-party] Plaintiffs must wait their turn behind the trustee, who has the responsibility to recover assets for the estate on behalf of creditors as a whole . . . and is pursuing [claims against the Apostolou Defendants] to maximize the debtors' estates for the benefit of their creditors, including the [third-party] Plaintiffs.

*Id.* (internal citations omitted).

To that end, the Seventh Circuit held that a bankruptcy court has the power to enjoin the litigation of causes of action that are not property of the estate if the litigation is sufficiently

9

related to the estate. "The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate . . . ." *Id.* at 882 (internal quotations and citations omitted). As a result, a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.* (internal quotations and citations omitted). Although the Apostolou investors' claims were not property of the estate, they were related to the estate because "[t]hey [were] claims to the same limited pool of money, in the possession of the same defendants, as a result of the same acts, performed by the same individuals, as part of the same conspiracy." *Id.* Thus, the Seventh Circuit held that a stay was appropriate to prevent a race to the courthouse between the investors and the trustee, which could "derail" the bankruptcy case. *Id.* at 883.

Here, even if certain of the claims alleged by the Tradex Plaintiffs were individual claims, this Court should enjoin prosecution of those claims under *Fisher*. As in *Fisher*, the Trustee is currently investigating and will likely bring claims against the Tradex Defendants arising from the same or substantially overlapping conduct alleged in the Tradex complaint, which seeks to recover from the same pools of assets that the Trustee ultimately may seek.

A. **The Trustee Is Currently Investigating Claims Against The Same Non-Debtor Defendants—The Tradex Defendants.**

The Trustee is currently investigating claims against the Tradex Defendants and anticipates filing adversary proceedings to the extent justified by his investigation. Under *Fisher*, the fact that the Trustee is still investigating these claims is no impediment to this Court enjoining causes of action that may impair the Trustee's ability to recover for the benefit of the estate. *See In re Lake States Commodities, Inc.*, 230 B.R. 602, 604 (Bankr. N.D. Ill. 1999).

### B. The Claims Arise From The Same And/Or Substantially Overlapping Conduct.

As described above, the Tradex Plaintiffs' claims against the Tradex Defendants arise from the same basic conduct as the claims that the Trustee is currently investigating. The conduct includes the alleged failure of the Tradex Defendants to ensure the legitimacy of the Debtors' transactions with the Petters Entities and, in turn, to ensure the validity of the financial returns allegedly resulting from those transactions. The Tradex Plaintiffs are alleging damages typical of all creditors. Ultimately, all of the Debtors' investors lost their investments because of Petters' fraudulent conduct. Thus, the Tradex Plaintiffs' claims are based on the same or similar conduct that caused the creditors' losses and upon which the Trustee will seek relief. Under *Fisher*, the Tradex Plaintiffs must "wait their turn behind the trustee." *Fisher*, 155 F.3d at 881.

### C. Recovery Is From The Same Limited Pool Of Assets.

The Tradex Plaintiffs seek relief predominantly in the form of money damages from the Tradex Defendants, the same individuals and entities from which the Trustee will seek to recover on behalf of the Debtors' estate. Thus, the Tradex Plaintiffs' claims are likely to affect the amount of property the Trustee could recover and distribute equitably, making the Tradex Plaintiffs' claims "related to" the bankruptcy under 28 U.S.C. §1334(b). *See In re Heath*, 115 F.3d 521, 524 (7th Cir. 1997) ("related to" means "likely to affect the debtor's estate"); *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987) ("related to" means to "affect[] the amount of property available for distribution"); *marchFIRST*, 288 B.R. at 532 ("[S]ince the funds available to the directors and officers to pay a judgment are the same funds available to the Debtors to indemnify them, a shortfall of funds would affect the administration of the estate.").

Absent an injunction, the Tradex Plaintiffs and the Trustee could conceivably obtain aggregated damages from Bell and/or the Management Companies in excess of $1.1 billion (the

11

Tradex Plaintiffs seek the entire amount of the funds lost in Petters by the Offshore Funds (*i.e.* $1.1 billion)). In contrast, the Debtors' audited financial statements from 2002 to 2007 show that Bell received and/or was credited with less than $190 million in management and performance fees from the Debtors and/or the Management Companies during that same period, and was actually paid less than $80 million. (Declaration of Tim Martin ("Martin Decl.") ¶ 3.) Moreover, Mr. Bell's direct and indirect personal assets total less than $25 million. (Declaration of Greg Bell ("Bell Decl.") ¶ 3.) And LJM currently has assets less than $500,000, not including any fees that may be recoverable. (*Id.* ¶ 4.) Thus, neither Bell nor LJM could satisfy judgments obtained by both the Trustee and the Tradex Plaintiffs.

The Tradex Plaintiffs also seek recovery from McGladrey and DeMaio, against whom the Tradex Plaintiffs and the other Third-Party Plaintiffs could conceivably obtain aggregated damages "in excess" of $1.2 billion each. In contrast, the limit on McGladrey's applicable insurance policy appears to be ▬▬▬. (*See* Green Decl., Ex. G, McGladrey Docs.; Green Decl. ¶ 9.) Similarly, DeMaio appears to have received little compensation from the Debtors, whose 2007-08 general ledgers state that the Offshore Directors were paid less than $250,000 between January 2007 and September 2008. (Martin Decl. ¶ 4.) But even without evidence of precise net worth, the Tradex Plaintiffs' open-ended request for relief, including punitive damages, indicates that judgments in favor of the Third-Party Plaintiffs (including the Tradex Plaintiffs) could substantially reduce the ability of McGladrey and DeMaio to satisfy a judgment to the Trustee. *See marchFIRST*, 288 B.R. at 532 ("[B]ecause the Defendants have not delineated a dollar figure for damages . . . a judgment . . . has the potential effect of leaving no funds available to pay a judgment obtained by the Trustee . . . .").

At bottom, the significant claims of the Tradex Plaintiffs have the potential to impair the

claims of the bankruptcy estate. Under section 105(a) of the Bankruptcy Code and *Fisher*, the Trustee should be allowed to pursue his claims unhindered by the risk of the Tradex Plaintiffs siphoning funds that the Trustee should equitably allocate among all of the Debtors' creditors, including the Tradex Plaintiffs.

### III. The Trustee Meets the Requirements for a Preliminary Injunction.

Under Section 105(a), a bankruptcy court may enjoin proceedings in other courts if:

(1) there is a likelihood of success on the merits; and

(2) the harm to the debtor outweighs the alleged potential harm to the public interest, or, in other words, that an injunction will not harm the public interest.

*See, e.g., Fisher*, 155 F.3d at 882. A trustee need not establish an inadequate remedy at law or irreparable harm. *Fisher*, 155 F.3d at 882; *In re L & S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir. 1993); *Megliola*, 293 B.R. at 446, 449. Here, the Trustee meets both requirements.

#### A. There Is Likelihood Of Success On The Merits.

A "likelihood of success on the merits" exists if, absent an injunction, any state or federal causes of action would impair the bankruptcy court's jurisdiction. *See Fisher*, 155 F.3d at 882; *In re Teknek, L.L.C.*, No. 07 C 5229, 2007 WL 4557813, at *14 (N.D. Ill. Dec. 21, 2007) (noting that "likelihood of success" requires that other proceedings will impair the bankruptcy court's jurisdiction but vacating injunction because Trustee failed to meet standard), *aff'd* 563 F.3d 639 (7th Cir. 2009). Here, as demonstrated in Section II above, the Trustee has a "likelihood of success on the merits" because the Tradex Plaintiffs' claims are against the same non-debtors as the Trustee's prospective claims and, absent an injunction, the pools of assets the Trustee seeks are insufficient to cover potential judgments against the Tradex Defendants. But even if the Trustee were required to demonstrate a likelihood of success on his underlying claims against Tradex Defendants, he could do so in any event. Indeed, having filed a class-action complaint

alleging that the Tradex Defendants are liable for the loss of the entire Petters' investment, the Tradex Plaintiffs presumably do not contend that the Trustee could not prove that same thing.[4]

B.     **There Is No Harm To The Public Interest.**

To determine harm to the public interest, courts generally consider the nature of the action to be resolved, *see* 2 Collier on Bankruptcy ¶ 105.02[1][d] (15th ed. rev. 2008), and the orderly collection and equitable distribution of assets. *See, e.g., marchFIRST,* 288 B.R. at 533; *In re Hunt,* 93 B.R. 484, 497 (Bankr. N.D. Tex. 1988). A "race to the courthouse [that] would derail the bankruptcy proceedings" is the antithesis of an orderly collection and equitable distribution of assets and exactly what a preliminary injunction should prevent. *See Fisher,* 155 F.3d at 883; *marchFIRST,* 288 B.R. at 532, 532 n.3 (suit between third parties would affect orderly administration of the estate). The *Fisher* decision also demonstrates the Seventh Circuit's conclusion that the public interest is not harmed by enjoining a non-debtor's claim against a common defendant. *See Fisher,* 155 F.3d at 882-83.

Here, the Trustee's motions to stay proceedings against the Tradex Defendants will not harm the public interest. Indeed, under *Fisher*, the public interest would not be harmed by enjoining the Tradex Plaintiffs' claims against the Tradex Defendants from whom the Trustee hopes to recover for the Debtors' estate. To the contrary, under *marchFIRST*, a preliminary injunction would promote the central goal of bankruptcy to "gather up" and resolve "related to" claims in an orderly fashion that allows all creditors' claims—including those of the Tradex Plaintiffs—to be considered equally.

---

[4] The *in pari delicto* doctrine also does not present an obstacle to the Trustee's claims against the Tradex Defendants. In its most recent pronouncement, the Seventh Circuit noted that the *in pari delicto* doctrine does not apply to trustees in bankruptcy. *Fisher,* 155 F.3d at 880 (noting that trustee's "argument is convincing on the inapplicability of the *in pari delicto* doctrine" to a bankruptcy trustee and noting that once "the trustee is in control, he should be able to pursue claims against the other wrongdoers for the benefit of the entire class of creditors").

14

## CONCLUSION

For the reasons set forth herein and in the Motion, this Court should enter a preliminary injunction to stay the Tradex Class Action..

Dated: June 17, 2009

Respectfully submitted,

Ronald R. Peterson
Terri L. Mascherin
Sarah Hardgrove-Koleno
Jason J. Green
JENNER & BLOCK LLP
330 North Wabash Avenue
Chicago, Illinois 60611-7603
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

*Counsel for Chapter 7 Trustee*

RONALD R. PETERSON, not individually but as interim Chapter 7 Trustee for Lancelot Investors Fund, L.P., *et al.*

By: */s/ Ronald R. Peterson*

One of His Attorneys