# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| LANCELOT INVESTORS FUND, L.P., *et al.*, | ) | Case No. 08 B 28225 |
| | ) | (Jointly Administered) |
| Debtor. | ) | |
| | ) | Honorable Jacqueline P. Cox |
| | ) | |
| RONALD R. PETERSON, as Chapter 7 Trustee for Lancelot Investors Fund, L.P., *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 09 A 00413 |
| | ) | |
| ELLERBROCK FAMILY TRUST, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In this matter, the plaintiff, Ronald R. Peterson, the Chapter 7 Trustee ("Trustee"), for Lancelot Investors Fund, L.P., *et al.* ("Debtors"),[1] seeks a preliminary injunction staying the lawsuit brought by McKinley Lancelot One, LLC, McKinley Associates, Inc., Scott Turban Family Trust, Scott Turban, Gene Turban and Paul Dimond ("Dimond") (all collectively "McKinley") against McGladrey & Pullen LLP ("McGladrey") in the Fourth Judicial District of Hennepin County District Court in Minnesota. The requested relief is granted for the following reasons.

---

[1] The Debtors consist of nineteen related entities that were engaged in the operation of related hedge funds or special purpose vehicles and consist of: SWC Services, LLC; Lien Acquisition, LLC; AGM, LLC; AGM II, LLC; KD1, LLC; KD2, LLC; KD3, LLC; KD4, LLC; KD5, LLC; KD6, LLC; KD7, LLC; KD8, LLC; RWB Services, LLC; Surge Capital II, LLC; Colossus Capital Fund, L.P.; Colossus Capital Fund, Ltd.; Lancelot Investors Fund, L.P.; Lancelot Investors Fund II, L.P.; and Lancelot Investors Fund, Ltd. (Chap. 7 Vol. Pet., Case No. 1:08-bk-28225, Dkt. No. 1 (Oct. 20, 2008)).

## I. JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A),(B), and (O).

## II. BACKGROUND

The Debtors filed for bankruptcy protection under chapter 7 of the United States Bankruptcy Code on October 20, 2008 after an alleged Ponzi scheme perpetrated by Thomas Petters and his affiliates was uncovered.[2] As part of the alleged scheme, Petters and his affiliates solicited capital from investors through special management companies created and managed by Gregory Bell ("Bell"). Bell and the management companies controlled the Debtors. The authority to make the Debtors' investment and management decisions was delegated to Bell and the special management companies. The Debtors served as commercial lenders to Thousand Lakes, a special purpose vehicle, which was controlled by and affiliated with Petters and Petters affiliated companies. Allegedly, Bell and the management companies caused the Debtors to purchase from Thousand Lakes numerous commercial notes that were supposed to be secured by goods and merchandise

---

[2]A Ponzi scheme is defined as:

> A fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts larger investments. Money from the new investors is used directly to repay or pay interest to earlier investors, usu. [sic] without any operation or revenue-producing activity other than the continual raising of new funds. This scheme takes its name from Charles Ponzi, who in the late 1920s was convicted for fraudulent schemes he conducted in Boston.

BLACK'S LAW DICTIONARY 1198 (8th ed. 2004).

owned by entities affiliated with Petters. The commercial notes were issued ostensibly to finance Thousand Lakes' purchase of goods to fulfill existing purchase orders from discount retailers such as Sam's Club, Costco, and others (the "Retailers"). Instead, the transactions appear to have been shams, part of an alleged multibillion dollar Ponzi scheme orchestrated by Petters and his affiliates. To further this scheme, Petters and his affiliates allegedly created fictitious invoices, purchase orders, and other documents. The purchase orders and documents evidencing a perfected security interest are alleged to be forgeries; the commercial notes held by the Debtors are alleged to be worthless. True to a classic Ponzi scheme, Petters and his affiliates were allegedly using the capital received from investors to enrich themselves and to make disbursements to earlier investors to keep the scheme operational. The scheme is believed to have netted in excess of $2 billion.[3]

FBI agents raided Petters' home and a number of his businesses on September 24, 2008. A federal grand jury in the District of Minnesota indicted Petters on December 1, 2008 on charges of mail and wire fraud, conspiracy to commit mail and wire fraud, money laundering and conspiracy to commit money laundering.

In administering the estate, the Trustee is currently investigating the activities of the Debtors and assessing potential claims of the estate against non-debtor third parties. One of these third parties is McGladrey. McGladrey provided auditing and financial services that consisted primarily of auditing the Debtors' financial statements and issuing opinions on whether those statements accurately depicted the Debtors' financial condition. The Trustee claims that he is currently investigating potential causes of action for professional negligence against McGladrey for

---

[3] *See Minnesota Executive Is Held on Federal Fraud Charges*, N.Y. TIMES, Oct. 3, 2008, at C2 (reporting that Larry Reynolds, a Petters associate, was recorded by the FBI estimating that the amount of the fraud to be "in excess of $2 billion").

inadequately investigating the Debtors' investments and for negligently issuing opinions that inaccurately presented the financial position of the Debtors. The Trustee believes that these claims are potentially worth $1.4 billion for the bankruptcy estate.

On May 19, 2009, the Trustee filed a complaint seeking a preliminary injunction to enjoin pending lawsuits initiated by various third party plaintiffs against defendants affiliated with the alleged Petters fraud.[4] The Trustee and those third party plaintiffs have negotiated an agreement regarding those pending lawsuits.[5] On June 16, 2009, McKinley filed its complaint against McGladrey in state court in Minnesota; the Trustee's current motion for a preliminary injunction seeks to enjoin this lawsuit. The complaint contains allegations of professional negligence and negligent misrepresentation against McGladrey; it alleges that the transactions between Petters and affiliated parties were entirely fictitious and could have been discovered if McGladrey had performed minimal due diligence by showing the purchase orders and invoices to the Retailers, following up with the Retailers' vendor requirements as described on the Retailers' websites, or physically visiting the warehouses where the alleged goods and merchandise were supposed to be stored. The

---

[4]The parties associated with the Petters' fraud are: (a) Bell; (b) the Debtors' management entities, Lancelot Management, Inc., Lancelot Holdings, LP, Lancelot Investment Management LP (f/k/a Lancelot Investment Management, LLC), Colossus Capital Management, LP; (c) the individual directors of debtor Lancelot Investors Fund, Ltd. and Colossus Capital Fund, Ltd., Tom Demaio, Vincent King, Benjamin Miller, and Trevor Sunderland, (d) the Debtors' fund administrators, Swiss Financial Services, Inc., and its offshore affiliate Swiss Finacial Services (Bahamas) Ltd.; and (e) the Debtors' auditors, McGladrey, RSM McGladrey, Inc., certain of their offshore affiliates and predecessor accountants, including Altshuler Melvoin & Glasser.

[5]See Stipulation and Dismissal Order, *Peterson v. Ellerbrock Family Trust, LLC*, case no. 1:09-ap-00413, Dkt nos. 48 & 49 (July 9, 2009) (stipulations between the Trustee and the third party plaintiffs whereby the third party plaintiffs agreed to stay their state and federal court actions for 120 days to allow the Trustee to file an adversary proceeding or cause of action against certain defendants, *inter alia*, McGladrey.)

complaint also alleges that McGladrey failed to follow generally accepted auditing standards (GAAS) when it issued materially false and misleading statements in its audits. McKinley claims that it invested over $11 million with Lancelot Investors, L.P., Lancelot Investors Fund II, L.P., and Colossus Capital Fund, L.P., three of the Debtors in the underlying jointly administered bankruptcy cases, and seeks damages "in excess of $50,000." The Trustee now seeks to enjoin that lawsuit; McKinley opposes the Trustee's efforts.

### III. DISCUSSION

The Trustee argues that the claims pursued in the McKinley lawsuit belong exclusively to the estate, that this Court has the authority to enjoin McKinley's lawsuit even if McKinley has an individual claim, and that the Trustee can satisfy the requirements for a preliminary injunction. Conversely, McKinley argues that it expended considerable time and resources based upon the Trustee's alleged suggestion to one of the McKinley plaintiffs, Dimond, that individual investors who invested in the Debtors pursue their own individual claims.

*A. Claims Against McGladrey as Property of the Bankruptcy Estate*

The Trustee first argues that the claims against McGladrey are property of the estate. Section 541 of the Bankruptcy Code creates the bankruptcy estate and broadly defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Further, the Bankruptcy Code provides the role of a bankruptcy trustee as the representative of the bankruptcy estate who may sue or be sued in that capacity. 11 U.S.C. § 323. A trustee in a chapter 7 bankruptcy case has the general duties of gathering property of the estate, liquidating it, distributing the proceeds to creditors, and closing the estate. 11 U.S.C. § 704(a). Section 362(a)(3) of the Bankruptcy Code prohibits third parties from performing any

action to obtain possession of property belonging to the estate or exercising control over the estate's property. 11 U.S.C. § 362(a)(3). The trustee serves two roles: representing the debtor and standing in the shoes of the debtor's creditors. *Koch Ref. v. Farmers Union Cent. Exch.*, 831 F.2d 1339, 1342 (7th Cir. 1987). This role eliminates myriad competitive and wasteful lawsuits by individual creditors. *Id.* at 1342-43. The trustee has the ability to file suit to reach property of the estate including potential causes of action the debtor may have against third parties. 11 U.S.C. § 544; *Koch*, 831 F.2d at 1343. Property belonging to the estate includes causes of action a debtor corporation has for fiduciary misconduct, mismanagement, or neglect of duty. *Koch*, 831 F.2d at 1343-44. Once the property is collected and liquidated, it is distributed on a *pro rata* basis to the estate's creditors. *Id.* at 1343.

A trustee has authority to bring general claims. *In re Teknek*, 563 F.3d 639, 646 (7th Cir. 2009). General claims are:

> [A]llegations that could be asserted by any creditor or could be brought by the trustee as a representative of all creditors. If the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors, it is a general claim[.]

*Id.* (quoting *Koch*, 831 F.2d at 1348-49).

The trustee has no standing to bring personal claims where only the claimant has suffered harm and "no other claimant or creditor has an interest in the cause." *Id.* (quoting *Koch*, 831 F.2d at 1348). To determine whether a claim is a general or personal claim, the "injury for which relief is sought" must be examined. *Id.* at 647. This is accomplished by considering "whether that injury is 'peculiar and personal to the claimant or general and common to the corporation and creditors.'" *Id.* (quoting *Koch*, 831 F.2d at 1349.

In the instant case, the claims McKinley is asserting against McGladrey are general claims

6

that rightfully belong to the bankruptcy estate. The alleged professional negligence and misrepresentations were suffered by many creditors, not just McKinley. The financial information McKinley relied upon was distributed to all investors, not individually to McKinley. This puts McKinley in the same shoes as other investors who relied upon the financial reports. This is apparent based on the multitude of other lawsuits filed by other creditors of the estate against McGladrey alleging claims sounding in misrepresentation and professional negligence. All parties that invested in the Debtors, including McKinley, lost their investments because of Petters' alleged fraudulent conduct which may have been facilitated by McGladrey's alleged negligence and misrepresentations regarding the Debtors' financial condition. McKinley's claims are no different than those claims.

McKinley does not argue that it holds a personal claim. Instead, McKinley avers that it relied upon statements made by the Trustee that it could pursue its claims individually against McGladrey. In support of its argument, McKinley posits email communications between Dimond and the Trustee.

The emails are as follows:

> Good to chat with you. As we discussed, I am focused on McGladrey. Given McGladrey's service directly to Petters and his corporate interests, I don't see how McGladrey is in any position to claim that it's not liable for the complete mistake of its annual audits of Lancelot's financials and annual performance on which I (and many if not most other investors) relied for (a) initial investment in Lancelot, (b) decision to roll-over interest reportedly earned rather than to redeem, and (c) additional investments in subsequent years. Given McGladrey's overall annual revenues and book of clients, I also don't see why any recovery will, practically, be limited to McGladrey's purported insurance limit. In fact, I can't imagine why McGladrey, unless it plans to go bankrupt (and that's possible only if McGladrey can do so without dragging the H&R Block parent down with them), will do anything other than settle claims from Lancelot (and other) investors as rapidly as possible to avoid McGladrey losing its reputation and very ability to survive and prosper.
>
> After thinking about our discussion, I've got a question: Given the split among Circuits and your suggestions that Lancelot investors go after McGladrey in separate proceedings from

7

> your roles [sic] as Trustee, shouldn't such suit[s] be brought in federal district court in Minneapolis (and bring in all relevant federal and state claims against McGladrey there), the place where there is and will be the most on-going publicity adverse and continuing disclosures to Petters and McGladrey? Also, I'm not sure why, if such suit[s] will be likely handled on a contingency basis, why there's any advantage in bringing this as a class action, rather than on behalf of named groups of investors. Let me know your views.
>
> You also mentioned that one group of investors has already sued McGladrey. If you have any details, can you provide them to me. [sic]
>
> I appreciate your insights and actions as Chapter 7 Trustee.

Email from Paul R. Dimond to Ronald R. Peterson dated Dec. 5, 2008 (Ex. A to Mem. of Law In Opp. of Tr. Mot. for Prelim. Inj. Staying McKinley Action, pg. 2 (attached as Ex. 1 to this Opinion)).[6]

> Here are the handouts from Tuesday's meeting. I have already sent the same to Ron. I am considering your suggestions and will meet with my special counsel on Monday.

Email from Ronald R. Peterson to Paul R. Dimond dated Dec. 5, 2008. *Id.* at pg. 1.

> Give me a call to discuss. I've done some further investigation into McGladrey, possible theories, forums and lawyers to represent what is in essence a [sic] accounting/audit tort claim on behalf of those who detrimentally relied on McGladrey's annual reviews and (mis)representations. I'd like to compare notes.

Email from Paul R. Dimond to Ronald R. Peterson dated January 6, 2009. *Id.*

Looking at the emails, it is apparent that Dimond informed the Trustee that he was investigating claims against McGladrey. They also discuss a supposed discussion where the Trustee suggested McKinley pursue its own claim. However, the Trustee's response does not suggest that McKinley should separately pursue its claims against McGladrey. Regardless of what the emails state, there are procedures for McKinley to pursue the claim if it so chooses. Federal Rule of Bankruptcy Procedure 6009 authorizes a bankruptcy trustee to prosecute or decline to prosecute causes of action on behalf of the estate. *Koch*, 831 F.2d at 1346 (citing FED.R.BANKR.P. 6009). If a creditor wishes

---

[6]Counsel for McKinley made an oral opposition before the Court in a hearing on June 30, 2009 and contemporaneously filed the attached brief with the Court, which the Court allowed.

to file a suit that the trustee has failed to file, that creditor must first request that the trustee abandon the suit and seek the bankruptcy court's permission to prosecute the cause of action on behalf of the estate. 11 U.S.C. § 554(b); *see also Koch*, 831 F.2d at 1346 n.9. Any party to the bankruptcy case may seek to have the bankruptcy court compel the trustee either to pursue a cause of action or abandon the claim. 11 U.S.C. § 554(b); *see also Koch*, 831 F.2d at 1346 n.9. Property of the estate that is not administered or abandoned by the trustee remains property of the estate until the bankruptcy case is closed. *See* 11 U.S.C. § 554(c) & (d).

*B. Injunctive Relief under Section 105(a)*

Even if the McGladrey claims were not property of the estate, the Trustee would still be entitled to the injunctive relief he now seeks. A bankruptcy trustee, in certain circumstances, may petition the bankruptcy court to block litigation of other claims that are not property of the estate if the litigation is sufficiently "related to" the trustee's administration of the estate. 28 U.S.C. 1334(b); *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998). "Related to" jurisdiction is found when resolution of a claim "affects the amount of property available for distribution or the allocation among creditors." *Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989) (quoting *In re Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987)); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995). "The jurisdiction of the bankruptcy court to stay actions in other courts extends beyond claims by and against the debtor, to include suits to which the debtor need not be a party but which may affect the amount of property of the bankrupt estate, or the allocation of property among creditors." *Fisher*, 155 F.3d at 882 (internal citations and quotations omitted). Section 105(a) of the Bankruptcy Code allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *Id.* (quoting 11

U.S.C. § 105(a)). For a bankruptcy court to issue an injunction blocking litigation in another court under § 105(a), the moving party must show a likelihood of success on the merits and potential harm to the public interest must be considered. *Id.* No demonstration of inadequate remedy or irreparable harm need to be shown. *Id.* The likelihood of success is based on the ease with which McGladrey could have discovered that no electronic goods had been purchased. The Bankruptcy Code's core goals of *pro rata* distributions and orderly administration of bankrupt estates make injunctive relief imperative and in the public's interest at this juncture.

In the current case, the Trustee avers that he is still investigating potential causes of action against McGladrey on behalf of the bankruptcy estate. As discussed earlier, there is substantial overlap between the conduct that the Trustee is currently investigating and the conduct that forms the basis of McKinley's claims against McGladrey. Moreover, the Trustee and McKinley seek the same target: an insurance policy which indemnifies McGladrey; it may not provide enough funds to satisfy a judgment in favor of the Trustee on behalf of the wider creditor class. A favorable judgement for McKinley, or any other third party, would diminish the amount of funds payable to the bankruptcy estate should the Trustee obtain a favorable judgment against McGladrey.

With these considerations in mind, the Trustee can successfully show he is entitled to injunctive relief under § 105(a). *Fisher* entailed facts analogous to the case at bar. In *Fisher*, a chapter 7 trustee successfully moved to enjoin third parties from pursuing fraud claims in district court against another third party nondebtor that the trustee was pursuing in an adversary proceeding before the bankruptcy court. The *Fisher* Court upheld the injunction under § 105(a), finding that "the investors' claims [were] sufficiently related to the property of the estate that their pursuit should be stayed pursuant to § 105 until the bankruptcy court has disposed of the trustee's claims based on

10

the same underlying transactions." 155 F.3d at 878. Successful litigation against McGladrey by McKinley would affect the amount of property the Trustee could collect to administer to the estate's creditors. Enjoining McKinley's litigation promotes the general policies of bankruptcy of allowing an orderly administration of the estate and *pro rata* recovery by the creditors. Conversely, allowing McKinley to proceed with its suit would encourage "a race to the courthouse [that] would derail the bankruptcy proceedings" that bankruptcy is intended to prevent. *See id.* at 883. The injunction the Trustee seeks under § 105(a) is granted.

## IV. CONCLUSION

For the foregoing reasons Trustee Ronald Peterson's Motion for Preliminary Injunction is granted. This opinion constitutes findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052. A separate order consistent with this opinion will be entered in compliance with Federal Rule of Bankruptcy Procedure 7052.

DATED: July 17, 2009

ENTER:

_____
Jacqueline P. Cox
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | * | Chapter 7 |
| LANCELOT INVESTORS FUND, L.P. et al. | * | Case No. 08-28225, et al. (Jointly Administered) |
| Debtor. | * | Hon. Jacqueline P. Cox Presiding |
| RONALD R. PETERSON, as Chapter 7 Trustee for Lancelot Investors Fund, L.P., et al., | * | |
| Plaintiff, | * | |
| versus | * | |
| ELLERBROCK FAMILY TRUST, LLC, et al., | * | Adv. No. 09-413 |
| Defendants. | * | |

## MEMORANDUM OF LAW IN OPPOSITION OF TRUSTEE'S MOTION FOR PRELIMINARY INJUNCTION STAYING THE MCKINLEY ACTION

**NOW INTO COURT**, through undersigned counsel, come Defendants, McKinley Lancelot One, LLC, McKinley Associates, Inc., Scott Turban Family Trust, Scott Turban, Gene Turban, and Paul Dimond (hereinafter "McKinley Plaintiffs"), and respectfully submit this Memorandum of Law in Opposition to Plaintiff, Ronald R. Peterson's, as Chapter 7 Trustee for Lancelot Investor's Fund, L.P., *et al.* (hereinafter "Trustee"), Motion for Preliminary Injunction Staying the McKinley Action. McKinley Plaintiffs offer as follows:

Page 1

Court Ex. 1

Since December of 2008, the McKinley Plaintiffs and their counsel have conducted extensive investigation into the negligence and/or negligent misrepresentation by McGladrey & Pullen LLP and its predecessor Altschuler, Melvoin & Glasser, LLP (hereinafter "McGladrey") with regard to their auditing of the Lancelot Investors Fund, L.P. et al. (hereinafter "Lancelot"). Through conversation and e-mail between the Trustee and McKinley Plaintiff, Paul Dimond, the Trustee suggested to Mr. Dimond on December 5, 2008, that the individual Lancelot investors pursue their individual claims separate from the actions taken by the Trustee.[1]

Based on the Trustee's representations, the McKinley Plaintiffs have pursued their individual claims against McGladrey, as suggested by the Trustee, expending considerable time and resources. The McKinley Plaintiffs have retained an expert with expertise in the auditing field. Additionally, the McKinley Plaintiffs have actually filed suit against McGladrey. Since December of 2008, the McKinley Plaintiffs have received absolutely no further correspondence from the Trustee indicating his intentions to pursue McGladrey, nor any other correspondence updating the McKinley Plaintiffs on the status of the Trustee's efforts against other possible assets of the Lancelot estate. Contrary to his initial recommendation and with no notice to the McKinley Plaintiffs, the Trustee now seeks to enjoin the McKinley Plaintiffs from pursuing their individual claims.

The Trustee has misled individual investors into believing that the Trustee would not pursue McGladrey, causing individual investors, including the McKinley Plaintiffs, to exhaust their own resources in pursuing McGladrey on their own, as per the suggestion of

---

[1] *Please see* E-Mail Correspondence between Trustee and Paul Dimond attached hereto as "Exhibit A."

Page 2

the Trustee. To now enjoin and dismantle the efforts of the individual investors who have actually investigated, pursued and filed suit against McGladrey would prejudice not only the McKinley Plaintiffs, but also the other individual investors in Lancelot who would certainly benefit from the work performed thus far and in the future by the McKinley Plaintiffs and their counsel. The Trustee should not be allowed to subvert the efforts of McKinley Plaintiffs, which efforts are the direct result of Trustee's inaction and direct representation to the McKinley Plaintiffs that they should pursue their claims against McGladrey separately from the Trustee.

WHEREFORE, Defendants, McKinley Lancelot One, LLC, McKinley Associates, Inc., Scott Turban Family Trust, Scott Turban, Gene Turban, and Paul Dimond, respectfully request that this Honorable Court deny the Trustee's Motion for Preliminary Injunction Staying the McKinley Action for the reasons stated in this Memorandum of Law in Opposition.

Respectfully submitted,

/s/ Hugh P. Lambert

Joseph W. Anthony (#19722 MN)
Vincent D. Louwagie (#194335 MN)
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 349-6969

Hugh P. Lambert (#7933 LA)
Cayce C. Peterson (#32217 LA)
Lambert & Nelson, PLC
701 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-1750
*Counsel for McKinley Plaintiffs*

Page 3

🛈 You forwarded this message on 6/29/2009 9:28 AM.

**Cayce Peterson**

| | | | |
|---|---|---|---|
| **From:** | Dimond, Paul R. [Dimond@MillerCanfield.com] | **Sent:** | Sun 6/28/2009 2:14 PM |
| **To:** | Hugh P. Lambert; Cayce Peterson | | |
| **Cc:** | | | |
| **Subject:** | FW: Lancelot-McGladrey | | |
| **Attachments:** | | | |



-----Original Message-----
**From:** Dimond, Paul R.
**Sent:** Tuesday, January 06, 2009 3:48 PM
**To:** 'Peterson, Ronald R'
**Subject:** RE: Lancelot-McGladrey

Ron,

Give me a call to discuss. I've done some further investigation into McGladrey, possible theories, forums and lawyers to represent what is in essence a accounting/audit tort claim on behalf of those who detrimentally relied on McGladrey's annual reviews and  (mis)representations. I'd like to compare notes.

Thanks,

Paul

> -----Original Message-----
> **From:** Peterson, Ronald R [mailto:RPeterson@jenner.com]
> **Sent:** Friday, December 05, 2008 3:02 PM
> **To:** Dimond, Paul R.
> **Subject:** RE: Lancelot-McGladrey
>
> Here are the handouts from Tuesday's meeting. I have already sent the same to Ron. I am considering your suggestions and will meet with my special counsel on Monday.
>
>
> **Ronald R. Peterson**
> Jenner & Block LLP
> 330 N. Wabash Avenue
> Chicago, IL 60611-7603
> Tel (312) 923-2981
> Fax (312) 840-7381
> RPeterson@jenner.com
> www.jenner.com
>
> CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.
>
>
> **From:** Dimond, Paul R. [mailto:Dimond@MillerCanfield.com]
> **Sent:** Friday, December 05, 2008 10:30 AM

https://svr-3/exchange/cpeterson/Inbox/FW:%20Lancelot-McGladrey-3.EML?Cmd=open


EXHIBIT A

**To:** Peterson, Ronald R
**Subject:** Lancelot-McGladrey

Ron,

Good to chat with you. As we discussed, I am focused on McGladrey. Given McGladrey's service directly to Petters and his corporate interests, I don't see how McGladrey is in any position to claim that it's not liable for the complete mistake of its annual audits of Lancelot's financials and annual performance on which I (and many if not most other investors) relied for (a) initial investment in Lancelot, (b) decision to roll-over interest reportedly earned rather than to redeem, and (c) additional investments in subsequent years. Given McGladrey's overall annual revenues and book of clients, I also don't see why any recovery will, practically, be limited to McGladrey's purported insurance limit. In fact, I can't imagine why McGladrey, unless it plans to go bankrupt (and that's possible only if McGladrey can do so without dragging the H&R Block parent down with them), will do anything other than settle claims from Lancelot (and other) investors as rapidly as possible to avoid McGladrey losing its reputation and very ability to survive and prosper.

After thinking about our discussion, I've got a question: Given the split among the Circuits and your suggestions that Lancelot investors go after McGladrey in separate proceedings from your roles as Trustee, shouldn't such suit be brought in federal district court in Minneapolis (and bring in all relevant federal and state claims against McGladrey there), the place where there is and will be the most on-going publicity adverse and continuing disclosures to Petters and McGladrey? Also, I'm not sure why, if such suit will be likely handled on a contingency basis, why there's any advantage in bringing this as a class action, rather than on behalf of named groups of individual investors. Let me know your views.

You also mentioned that one group of investors has already sued McGladrey. If you have any details, can you provide them to me.

I appreciate your insights and actions as Chapter 7 Trustee.

Regards,

Paul

---

NOTICE TO PERSONS SUBJECT TO UNITED STATES TAXATION (MCPS)

DISCLOSURE UNDER TREASURY CIRCULAR 230: The United States Federal tax advice, if any, contained in this document and its attachments may not be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement, nor is such advice intended or written to be used, and may not be used, by a taxpayer for the purpose of avoiding Federal tax penalties.

---

## CERTIFICATE OF SERVICE

I, HUGH P. LAMBERT, ESQ., hereby certify that a copy of the above and foregoing has been duly served upon all counsel of record this 29th day of June, 2009, via CM/ECF transmission.

/s/ Hugh P. Lambert
HUGH P. LAMBERT, ESQ.